## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ALEXANDER HOWELL,                    )
                                     )
            Plaintiff,               )
                                     )
        v.                           )         No. 4:23-cv-00464-CDP
                                     )
RACHEL GETTINGER,                    )
                                     )
            Defendant.               )

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Alexander Howell for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted an inmate account statement as required by 28 U.S.C. § 1915(a)(2). Nevertheless, having reviewed the information contained in the motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his or her inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, she must submit a copy of her inmate account statement in support of her claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating

that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. She[1] brings this civil action pursuant to 42 U.S.C. § 1983, naming Correctional Case Manager (CCM) Rachel Gettinger as defendant. (Docket No. 1 at 1-2). CCM Gettinger is sued in both her official and individual capacities. (Docket No. 1 at 2). In the complaint, plaintiff – who is "an identified trans-woman" – presents allegations regarding the unconstitutional disclosure of confidential information under the Eighth and Fourteenth Amendments.

---

[1] Plaintiff identifies as a transgendered woman in the complaint, and uses female pronouns when referring to herself. The Court will do likewise.

In the "Facts" section of the complaint, plaintiff asserts that on March 23, 2023, CCM Gettinger was conducting "a housing unit round." During the round, Gettinger spoke with plaintiff regarding plaintiff's "concerns," though she does not specify what these concerns entailed. Afterwards, Gettinger moved "on to the next cell," which held inmate Nicholas Ingram.

There, CCM Gettinger spoke with Inmate Ingram. During this conversation, plaintiff alleges that Gettinger "denied [Ingram] the right to an IRR[2] for denial to be accepted into the transgender committee." According to plaintiff, Gettinger told Ingram that: "[W]e know you and [plaintiff] are up to something, he thinks he[']s smarter than us. He just got reapproved to the transgender committee in November." Ingram again requested an IRR, at which point Gettinger again refused, accusing Ingram of trying to get "items to sell to" plaintiff, and asking Ingram how much plaintiff was paying him. Ingram denied knowing what Gettinger was talking about, and Gettinger "moved on to the next cell," occupied by inmate Savontea Jones.

Later that day, plaintiff "got into a debate" with "a bunch of offenders." During the debate, plaintiff and Inmate Ingram "cursed each other about being gay as an all around topic." At some point, Ingram repeated CCM Gettinger's statement regarding plaintiff being "reapproved for the transgender committee in November." According to plaintiff, both Ingram and Inmate Jones had heard Gettinger say this earlier. Because of this earlier statement, Ingram called plaintiff a "fake ass transgender." (Docket No. 1 at 3). Plaintiff states that she tried to defend herself by telling the other inmates that Gettinger lied, and that "the reapproval that occurred in January 2023 [was] due to the switching of companies from Corizon to Centurion." The other inmates responded by calling plaintiff "a boy," as well as a "fake" homosexual. Plaintiff asserts that this "exacerbated [her] depression and mood swings," and made her think about castrating herself.

---

[2] Informal Resolution Request

Attached to the complaint is a document titled "Declaration of Nicholas Ingram." (Docket No. 1-1). The Court has reviewed this exhibit and will treat it as part of the pleadings.[3] In the declaration, Inmate Ingram states that on March 23, 2023, he spoke with CCM Gettinger while she made her rounds, and requested that he be admitted to the transgender committee. (Docket No. 1-1 at 1). Gettinger allegedly told him "no," and advised Ingram that Gettinger believed plaintiff wanted "to buy affirmative gender items" from Ingram. Gettinger also stated that plaintiff had "just [been] reapproved for [the] transgender [committee] in November." Ingram denied this to Gettinger, but Gettinger refused to give him an IRR, and walked away.

Later that day, Inmate Ingram states that he and plaintiff "broke out in a small dispute over a gay topic," and he repeated to plaintiff Gettinger's statement regarding reapproval for the transgender committee. Plaintiff tried to defend herself, but Inmate Jones stated that he had heard Gettinger as well. (Docket No. 1-1 at 2). According to Ingram, he and "other offenders called [plaintiff] names [until] eventually she was pulled out [of] her cell to talk to the [sergeant] and nurse." Ingram notes that he and plaintiff "did make up."

Based on these allegations, plaintiff concludes that CCM Gettinger disclosed "to another offender the medical confidentiality status of [her] hormonal therapy," causing "hostility and intolerance from others." (Docket No. 1 at 3). She also states that Gettinger infringed on her privacy. As such, plaintiff contends that Gettinger violated her rights under the Eighth and Fourteenth Amendments.

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

According to plaintiff, CCM Gettinger's actions caused an exacerbation in depression and insomnia, and amounted to intentional infliction of emotional distress. (Docket No. 1 at 5). As such, she requests a preliminary and permanent injunction against Gettinger. (Docket No. 1 at 3). She also seeks compensatory damages in the amount of $25,000, and punitive damages in the amount of $10,000. (Docket No. 1 at 4).

Subsequent to the filing of the complaint, plaintiff submitted a motion for preliminary injunction and temporary restraining order, as well as a memorandum in support. (Docket No. 4; Docket No. 5). The motion will be discussed in further detail below.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing CCM Gettinger of revealing confidential medical information to another inmate. Because she is proceeding in forma pauperis, the Court has reviewed her complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  Official Capacity Claim Against CCM Gettinger

Plaintiff has sued CCM Gettinger in an official capacity. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues

only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, CCM Gettinger is alleged to be an employee of the Potosi Correctional Center. As such, the official capacity claim against her is actually a claim against the State of Missouri itself, her employer. The claim fails for three reasons.

### i. State is Not a 42 U.S.C. § 1983 "Person" in a Claim for Money Damages

First, to the extent that plaintiff seeks money damages, the State of Missouri is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because plaintiff is missing an essential element of a § 1983 action, her claim for money damages against the state must be dismissed.

### ii. Sovereign Immunity Bars Claim for Money Damages

Second, sovereign immunity also protects the State of Missouri from plaintiff's claim for money damages. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits

7

brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional

sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property"). For this reason as well, plaintiff's claim for money damages against the State of Missouri must be dismissed.

### iii.    Plaintiff Has Not Demonstrated the State of Missouri's Liability

To the extent that plaintiff seeks prospective injunctive relief, she has not demonstrated the State of Missouri's liability. Such liability may attach to a governmental entity if a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can prove the liability of the State of Missouri.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations

by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can assert a claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). As with an unconstitutional custom, a "failure to train or supervise must

be the moving force behind the constitutional violation." *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the proposition that she was harmed due to a State of Missouri policy, custom, or failure to train.

First, with regard to policy, plaintiff points to no policy statement, ordinance, regulation, or official decision as being at issue in this case. Certainly, she does not allege that CCM Gettinger's alleged disclosure was made pursuant to "a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." That is, none of plaintiff's facts even remotely suggest that the State of Missouri has a policy of allowing correctional officials to disclose information about an inmate to other inmates, or that Gettinger was following such a policy during her conversation with Inmate Ingram.

Second, as to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" State of Missouri employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of a pattern, plaintiff presents facts of only a single occurrence when CCM Gettinger purportedly disclosed plaintiff's confidential information to another inmate. The Court cannot infer a pattern from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

11

Third, regarding a failure to train, a plaintiff is required to show that the State of Missouri acted with deliberate indifference. To show deliberate indifference, she must demonstrate that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." This is typically done by alleging a "pattern of similar constitutional violations by untrained employees." As discussed above, plaintiff has not presented facts regarding a pattern, but focuses instead on a single instance.

Finally, to the extent that plaintiff seeks to hold the State of Missouri liable as CCM Gettinger's employer, the Court notes that respondeat superior is not available under 42 U.S.C. § 1983. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a [governmental entity]…cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A [governmental entity] may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all of these reasons, plaintiff has not demonstrated the liability of the State of Missouri. Therefore, to the extent that plaintiff seeks prospective injunctive relief, she has failed to state an official capacity claim.

### B. Individual Capacity Claim Against CCM Gettinger

Plaintiff has also sued CCM Gettinger in her individual capacity, alleging violations of the Eighth and Fourteenth Amendments due to her purported disclosure of plaintiff's confidential information to another inmate. As set forth below, plaintiff has failed to state a claim under either constitutional amendment.

i.      **Fourteenth Amendment Claim**

In her complaint, plaintiff alleges a Fourteenth Amendment violation due to CCM Gettinger's alleged disclosure. Before 2020, the Eighth Circuit recognized a right to informational privacy under the Fourteenth Amendment. *See Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir. 1993) (explaining that "the Supreme Court [has] determined that one component of the protection of the right to privacy embodied in the fourteenth amendment is an individual's interest in avoiding disclosures of personal matters"). This safeguard was interpreted as including "protection of the individual interest in avoiding disclosure of personal matters," and was "characterized as the right to confidentiality." *Cooksey v. Boyer*, 289 F.3d 513, 515 (8th Cir. 2002).

This right, however, was "generally limited to only the most intimate aspects of human affairs." *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988). More specifically, to violate the "constitutional right of privacy[,] the information disclosed must be either a shocking degradation or an egregious humiliation of [plaintiff] to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information." *Riley v. St. Louis County of Mo.*, 153 F.3d 627, 631 (8th Cir. 1998). This standard has been termed "exacting," and required an examination of "the nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession." *Eagle v. Morgan*, 88 F.3d 620, 625 (1996).

While there have been a variety of disclosures considered under the Fourteenth Amendment's right to confidentiality, many of these cases have resulted in a finding that no violation had occurred. *See Cooksey*, 289 F.3d at 517 (determining that no constitutional violation occurred following disclosure of police chief's treatment for psychological stress); *Riley*, 153 F.3d at 631 (determining that no constitutional violation occurred following county's release of a photo

of an eighteen-year-old who had committed suicide); *Eagle*, 88 F.3d at 624-27 (determining that no constitutional violation occurred following disclosure of a guilty plea that was already in the public domain); *Peffer*, 993 F.2d at 1350-51 (determining that no constitutional violation occurred following disclosure of adverse hiring decision); *Wade*, 843 F.2d at 1151 n.2, 1153 (determining that no constitutional violation occurred following disclosure of list of survivalists); and *Leher v. Bailey*, 2006 WL 1307658, at *5 (E.D. Ark. 2006) (finding no clearly established right "under the Fourteenth Amendment for an inmate not to have medical information, such as HIV status, disclosed by government actors regardless of whether or not the actors made the disclosure on the basis of a legitimate penological reason").

More recently, the United States Court of Appeals for the Eighth Circuit has strongly questioned whether any right to informational privacy exists under the Fourteenth Amendment, whether inside of a prison or out. *See Dillard v. O'Kelley*, 961 F.3d 1048, 1054 (8th Cir. 2020). In *Dillard*, plaintiffs alleged that a tabloid had submitted a Freedom of Information Act (FOIA) request to governmental agencies related to reports of sexual assaults against various individuals. *Id.* at 1051. The governmental agencies responded to the FOIA request by disclosing certain redacted reports. *Id.* Despite the redactions, plaintiffs were readily identified as the victims. *Id.* Plaintiffs brought suit under 42 U.S.C. § 1983. *Id.* at 1051-52.

The issue before the Court of Appeals was whether defendants had qualified immunity. *Id.* at 1052. In its decision, though, the Court of Appeals noted that there was a "threshold question" as to whether the right defendants were alleged to have violated even existed. *Id.* at 1053. According to the Court of Appeals, a number of earlier panel decisions had determined – based on their interpretations of the Supreme Court's decisions in *Whalen v. Roe*[4] and *Nixon v.*

---

[4] *Whalen v. Roe*, 429 U.S. 589 (1977).

*Administrator of General Services*[5] – that the Fourteenth Amendment's "protection of the right of privacy" included "an individual's interest in avoiding disclosures of personal matters." *Id*. at 1053-54. Indeed, the Court of Appeals noted that "a majority of the courts of appeals interpreted *Whalen* and *Nixon* as recognizing a constitutional right to the privacy of medical, sexual, financial, and other categories of highly personal information." *Id*. at 1053.

Despite these earlier cases, the Court of Appeals observed that *Whalen* and *Nixon* did not actually "involve alleged wrongful disclosures of private information." *Id*. at 1054. Furthermore, the Court of Appeals looked to the more-recent Supreme Court decision in *NASA v. Nelson*.[6] *Id*. at 1053. In *Nelson*, the Supreme Court "declined to provide a definitive answer to whether there is a constitutional right to informational privacy." *Id*. The Court of Appeals determined that the lack of a definitive answer "confirmed that [the Eighth Circuit] and other circuits erred in reading inconclusive statements in *Whalen* and *Nixon* as Supreme Court recognition of a substantive due process right to informational privacy." *Id*. at 1054. The Court of Appeals went on to say that "[t]o the extent [prior Eighth Circuit] cases read *Whalen* and *Nixon* as recognizing the right to informational privacy, *Nelson* makes clear they were wrong to do so." *Id*.

Based on this review of Eighth Circuit caselaw, the Court has determined that plaintiff has failed to state a Fourteenth Amendment claim for three reasons.

### a. Disclosure Not Shown to Involve Confidential Information

First, there is the nature of the disclosure at issue in this case. Plaintiff refers to CCM Gettinger's statement – that plaintiff "was just reapproved for the transgender committee in November" – as revealing "confidential information" and breaching "medical confidentiality." This assertion, however, is not supported by sufficient facts as to what makes this information

---

[5] *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977).
[6] *NASA v. Nelson*, 562 U.S. 134 (2011).

confidential in character. More particularly, Gettinger does not disclose any specific diagnosis or medical condition, and she does not reveal any particular medication or course of treatment. There is also no indication that Gettinger is part of the medical staff, or gained this information as a result of a privileged relationship. Plaintiff notes that the committee has something to do with "hormonal therapy," and in her motion for preliminary injunction, suggests that her denial by the committee meant that she could not receive gender affirming care. Nevertheless, there is no indication Gettinger actually said any of that to Inmate Ingram.

Clearly, plaintiff believes that mere mention of "the transgender committee" is a breach of confidentiality, but this is not readily apparent. Plaintiff indicates that the committee decides who does or does not receive gender affirming care, but beyond that, her filings are silent as to its workings. In particular, she does not explain the makeup of the transgender committee, how it functions, who has knowledge of the committee, how one seeks approval from the committee, what pledges of confidentiality are or are not made regarding the committee, or even whether the committee's deliberations are meant to be private. The Court notes, for instance, that CCM Gettinger apparently knew about the committee, even though she is not alleged to be medical personnel. The Court recognizes the possibility that this reference might be sensitive, but plaintiff's facts do not make this clear, or allow the Court to draw such an inference. Instead, the Court is required to speculate about the contents of Gettinger's passing remark, and to rely on her legal conclusion that it amounts to an unauthorized disclosure. This is not sufficient to establish that Gettinger's disclosure revealed information regarding the "most intimate aspects of human affairs."

In addition, plaintiff mentions that CCM Gettinger revealed something about her "personal transgender status." The Court notes, however, that plaintiff admits that she is "an identified trans-

woman." Furthermore, the facts in the complaint, the attached exhibit, the motion for preliminary injunction, and the supporting memorandum all suggest that plaintiff's transgendered status was known to other inmates and correctional staff. Thus, it does not appear from plaintiff's filings that her identity as a transgendered person was itself confidential, but was already known to others. As such, plaintiff has not shown how Gettinger conveyed "highly personal information" about her orientation.

Given the few facts that plaintiff has alleged, she has not demonstrated that Gettinger's brief statement to Inmate Ingram revealed plaintiff's sensitive medical information, information that was confidential, or information that revealed plaintiff's sexual orientation. Thus, she has failed to state a claim.

### b.   No Right to Informational Privacy Post-*Dillard*

Second, based on the Court's interpretation of the Eighth Circuit Court of Appeals' decision in *Dillard v. O'Kelley*, it does not appear that there is a freestanding right to informational privacy under the Fourteenth Amendment. In other words, the Court of Appeals has stated that the proposed Supreme Court underpinnings for a right of informational privacy do not actually support such a right. The logical end result of the Court of Appeals' *Dillard* decision seems to be that there is no right of informational privacy in the Eighth Circuit. *See Dillard*, 961 F.3d at 1057 (Grasz, J., concurring in part and concurring in result) ("The constitutional right to informational privacy in the Eighth Circuit is dead"); and *Jackson v. Ramsey County Adult Detention Center*, 2022 WL 2374666, at *6 (D. Minn. 2022) (explaining that in *Dillard*, "the Eighth Circuit…called into question whether any constitutional right to informational privacy exists – even outside of a prison system"). As such, even if CCM Gettinger is assumed to have revealed confidential information,

she cannot be said to have violated a right that does not exist. Therefore, plaintiff has failed to state a claim under the Fourteenth Amendment.

### c.  Disclosure Not a Shocking Degradation

Finally, even if the Court assumes that there continues to be a right to informational privacy under the Fourteenth Amendment, plaintiff has not stated a claim. As noted above, pre-*Dillard*, to violate the "constitutional right of privacy[,] the information disclosed must be either a shocking degradation or an egregious humiliation of [plaintiff] to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information." *See Riley*, 153 F.3d at 631. This is an "exacting" standard. *See Eagle*, 88 F.3d at 625.

In this case, the standard has not been met. Plaintiff's facts are not sufficient to show that CCM Gettinger's disclosure was a shocking degradation or an egregious humiliation. To the contrary, the disclosure was brief, vague, and made during a conversation in which only two people – besides plaintiff – were present to hear it. Moreover, plaintiff has not demonstrated that Gettinger made the disclosure to further some specific state interest. She has also failed to establish that obtaining this information required a pledge of confidentiality that Gettinger subsequently breached. Therefore, even if a right to informational privacy still remains under the Fourteenth Amendment, and even if the disclosure consisted of confidential information, plaintiff has not demonstrated that the right was violated.

For all of these reasons, plaintiff has failed to state a claim against CCM Gettinger in her individual capacity for violating the Fourteenth Amendment. Therefore, this claim must be dismissed.

###### ii.      Eighth Amendment Claim

In her complaint, plaintiff also asserts a violation of the Eighth Amendment. Though she is not clear on this point, plaintiff's claim can be construed as presenting two different theories of potential liability: (1) that CCM Gettinger was deliberately indifferent to plaintiff's constitutional rights; and (2) that Gettinger was deliberately indifferent to her safety and well-being. *See Jackson*, 2022 WL 2374666, at *8.

With regard to the first theory, the Court has already determined – as discussed at length above – that plaintiff has not stated a Fourteenth Amendment claim against CCM Gettinger. Thus, she cannot show that Gettinger acted with deliberate indifference towards her rights under the Fourteenth Amendment.

As to the second theory, the Eighth Amendment protects inmates against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The amendment has been interpreted as requiring that prisoners be given humane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An Eighth Amendment claim has both an objective and a subjective component. *See Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).

Regarding the objective component, there must be "a substantial risk of serious harm" to the inmate. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). If a plaintiff fails "to plausibly allege a substantial risk of harm," he or she "fails to state a claim," and "there is no need to consider the subjective issue of [the defendant's] deliberate indifference." *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020).

As to the subjective component, plaintiff must demonstrate that the prison official was deliberately indifferent, which "in this context means [an] actual intent that the inmate be harmed, or knowledge that harm will result, or reckless disregard of a known excessive risk to inmate health

and safety." *See Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir. 1997). "Deliberate indifference under the Eighth Amendment is the equivalent of criminal recklessness: the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hodges v. Department of Corrections*, 61 F.4[th] 588, 592 (8th Cir. 2023). *See also Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021) (explaining that deliberate indifference "means that prison officials subjectively knew of and disregarded the inmate's safety risk").

Here, plaintiff asserts that CCM Gettinger disclosed that she "was just reapproved to the transgender committee" in front of at least two other inmates. Later, plaintiff "got into a debate" with "multiple defenders," at which point Gettinger's disclosure formed the basis for name-calling that upset her. In her subsequent preliminary injunction memorandum, plaintiff adds that there have been "threats" which she feels puts her at a "greater risk of assault." (Docket No. 5 at 2).

This does not establish a substantial risk of serious harm. In the complaint itself, plaintiff states that the only consequence of this disclosure was name-calling. None of this name-calling indicates a substantial risk to plaintiff's health or safety. Further, her own exhibit shows that she was allowed to talk to a sergeant and nurse after this "debate," and that she and Inmate Ingram – with whom the debate started – eventually made up. As to the "threat" reference made in plaintiff's preliminary injunction memorandum, there are no facts as to the nature of this threat; the words that were used; who made the threat; and why the threat is credible. This post-complaint suggestion amounts to an unsupported conclusion, and is insufficient to establish that plaintiff was actually at a substantial risk for serious harm.

Even assuming that plaintiff properly alleged a substantial risk of harm, she has not demonstrated that CCM Gettinger was deliberately indifferent to that risk. More precisely, plaintiff

has not presented facts indicating that Gettinger knew or should have known that her disclosure would result in the risk of a subsequent debate, argument, or threats, but nonetheless disregarded that risk. Simply put, Gettinger's alleged wrongdoing – consisting of a passing reference to plaintiff's reapproval by the transgender committee during a conversation with another inmate – does not amount to deliberate indifference, which is the equivalent of "criminal recklessness."

For all of these reasons, plaintiff has failed to state a claim against CCM Gettinger in her individual capacity for violating the Eighth Amendment. Therefore, this claim must be dismissed.

### C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### D. Motion for Preliminary Injunction and Temporary Restraining Order

Plaintiff has also filed a motion for a preliminary injunction and temporary restraining order, as well as a supporting memorandum. (Docket No. 4; Docket No. 5). In the motion, plaintiff seeks an injunction against CCM Gettinger that prevents her from discussing plaintiff's "confidential information with any unauthorized personnel." (Docket No. 4 at 1). She alleges that on March 23, 2023, Gettinger informed Inmate Ingram of her "personal transgender status" without her consent, and this was overheard by Inmate Jones. (Docket No. 4 at 3). Later, plaintiff states that she was "humiliated, taunted, and teased," and that even though Ingram apologized to her, the others continued to mimic, mock, and tease her for "multiple days and still do."

Plaintiff further asserts that on March 22, 2023, the day before the incident, Inmate Ingram was admitted to the transgender committee. (Docket No. 4 at 4). However, he was apparently refused "gender affirming items." The next day, Ingram was denied an IRR in order to file against

the committee. At that point, CCM Gettinger stated that Ingram was scheming "to join the transgender committee just to sell [plaintiff] gender affirming items."

On March 29, 2023, plaintiff asserts that she filed an IRR on CCM Gettinger for "telling confidential information about [her] to inmates, breaking the HIPPA law and [her] constitutional right[s]." According to plaintiff, Gettinger "retaliated" by giving a conduct violation to Inmate Ingram.[7] The conduct violation was the result of Ingram "lying to the transgender committee about [his] sexuality[,] gender, preference, and reason to try and join the committee." (Docket No. 4 at 5).

In the supporting memorandum, plaintiff repeats her assertion that CCM Gettinger "disclosed information relating to [her] sexual orientation to unauthorized" persons. (Docket No. 5 at 1). Specifically, she states that Gettinger told Ingram she was "denied gender affirming items[,] which at the time [she] was." (Docket No. 5 at 2). Because Gettinger revealed this information, it allowed Inmate Ingram "to use it against" her, which "led to [her] being taunted and humiliated." Even when Ingram apologized, others "taunt [her] and give threats[,] making [her] have greater risk of assault."

Attached to the memorandum is a copy of Inmate Ingram's conduct violation report, in which CCM Gettinger asked Ingram if he was attempting to join the transgender committee because "his neighbor" had been "denied…new gender confirming items" and was paying Ingram to get those items. (Docket No. 5 at 3). According to the conduct violation, Ingram acknowledged the scheme by advising "You're pretty smart."

---

[7] To the extent that plaintiff is attempting to vindicate the rights of Inmate Ingram, the Court notes that she has no standing to bring claims on behalf of other prisoners. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "[a] prisoner cannot bring claims on behalf of other prisoners"); and *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983) (explaining that plaintiff did not have "standing to assert" a constitutional claim on behalf of another person). Furthermore, as plaintiff is not an attorney, she can only plead and conduct her own case. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel…").

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The same standard is applied to a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019). She has not carried that burden. Regarding irreparable harm, plaintiff has not presented any facts showing that she is in danger. Her passing reference to "threats" contains no specifics, and amounts to an unsupported conclusion. For example, plaintiff has not provided the content of the alleged threat, has not asserted who made the threat, and has given no indication that she reported this threat to correctional staff. More importantly, as to success on the merits, plaintiff has failed to present facts demonstrating that she is entitled to relief. That is – as discussed at length above – plaintiff has not sufficiently stated a claim under either the Eighth or Fourteenth Amendments.

With regard to the Fourteenth Amendment, plaintiff has not demonstrated that CCM Gettinger's disclosure actually consisted of confidential information. Even if it had, the bare reference to the "transgender committee" is not "a shocking degradation or an egregious humiliation of [plaintiff] to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information." As to the Eighth Amendment, plaintiff does not demonstrate that the disclosure put her at a substantial risk of serious harm, or that Gettinger knew of and disregarded that risk. That is to say, plaintiff has set forth no facts that she was subjected to anything other than some name calling, while her solitary and non-specified reference to "threats" entirely fails to establish that she faced an actual risk to her health or safety. For these reasons, plaintiff's motion for preliminary injunction and temporary restraining order is denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make her remittance payable to "Clerk, United States District Court," and to include upon it: (1) her name; (2) her prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction and temporary restraining order (Docket No. 4) is **DENIED**.

24

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 12th day of May, 2023.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE